Nott, J.
This is a special verdict submitted to the court without argument. The only question for consideration is, whether a British subject, born before the American Revolution, can inherit the lands of an American citizen who died since the wax’, intestate and without heii’s in this country. In the cases of Innis vs. Franklin and of Love vs. Haddin, decided at the Constitutional Court at Columbia, it was held that such persons could not inherit. I am also informed that a similar decision has been made in this Court. In the Supreme Court of the United States, the question has been determined the same way; Dawson’s Lessee vs. Godfrey, 4th Cranch 320. Upon a review of those cases, I think the decisions correct.
*63 The principle contended for, is, that natural born subjects and those owing allegiance to a state, can-Hot be deprived of their right of inheritance by any revolution that necessarily produces a change in their political relations; that, therefore, the antenati both of England and the United States, are reciprocally entitled to inherit lands in both countries. But it may be observed, that alienage is altogether a subject of municipal regulation; and in adopting those regulations, policy and expediency alone must be the governing motives. The citizens or subjects of one country can have no just claim upon the country of another, incompatible with the interest and policy of that other; and the judges of this Court are not bound to make the law of England, the rule of decision, when it is inconsistent with the political situation of this country. Indeed, it is very questionable, whether that principle of the English law as understood in that country, will apply to this case.
The party claiming in this case never was a natural born subject of, nor owed allegiance to the United States. It would, therefore, seem more correct to' say, that none except those born in America, or who resided here at the declaration of independence, can be said to owe allegiance to this government; and on that principle, in the case of McElvaine vs. Cox’s Lessee, 2nd Cranch, 280. 4th Cranch, 211. Daniel Cox, who was a native of, and resided in the state of New-Jersey, until the year 1777, or 8, was held to be a natural bom citizen, and intitled to inherit, although at the commencement of the revolu *64 tion, j,e held a commission under the British Government, and continued to do so during the whole war, and left the country with the British at the restoration of peace. On the contrary, in the case of Jackson on the demise of Folleard and Wallace vs. Wright, 4th Johnson, 75. Abraham Nelson, who came into the United States in the year 1778 or 9, was held to be a British subject and incapable of holding lands, and his heirs incapable of inheriting, except under treaty of 1794. I am of opinion, therefore, that the land in the present case has escheated and belongs to the state.
Brevard, J.
The principle upon which this case depends, was settled in Halliburton’s case, which was decided in this court, at the sittings in Charleston, in January 1810. . Henry Osborne, whose estate is claimed as an escheat, was, at the time of his death, a citizen of the United States. His brothers, Richard and Thomas Osborne, who claim the estate, as his next heirs by descent, were born in Ireland, before the year 1776, and always remained British subjects. By the declaration of Independence, the United States became an Independent nation, and all who did not acknowledge the independence and sovereignty of the states were, of course, aliens. Aliens are those who are born out of the allegiance of the state or sovereignty under which the estate lies, which gives rise to the question; or, in other words, aliens are those who owed no allegiance, at the time of their birth, to *65 the government under which the estate lies at the time, when the descent happens, or the escheat falls. Richard and Thomas Osborne, neither at the time of their birth, nor at any time afterwards, owed any allegiance to the government of the United States. At the time of the death of brother, Henry Osborne, they were aliens and incapable of taking by descent. By the law of nations, aliens are not entitled to claim lands by deyise or descent; and for wise, political reasons, they are generally excluded from the right of holding real estates by the positive laws of most countries. The principles of the common law of England, which have been adopted, and have generally prevailed in this country from its first settlement, deny to aliens the right of taking real estate by inheritance. The technical reason assigned is, the want of inheritable blood. Coke on Litt. 2. 8. 1st Vent. 413. 4 D. & E. 300. &c.
It may be alleged, that the inhabitants of this coun- • try, at the time of the birth of Richard and Thomas Osborne owed a common allegiance with the inhabitants of Ireland to the same- sovereign, and, as the British courts on this ground, allow American ante-nati to inherit lands in England, our' courts ought, on a principle of comity, to allow British subjects, born prior to our déclaration' of independence, to inherit lands in this country. But this reasoning is by no means satisfactory, nor is it compatible with the principles of our government. The doctrine of the British courts seems to be founded on a principle *66 which has been constantly maintained by British iu- • . . ii ° rists and politicians; namely, that a man can never, under any circumstances, divest himself of the allegiance under which he is horn. The creed they profess, and wish to establish, is (i once a British su]jject, and always a British subject/-’ though acknowledged to be aliens. This may suit them, but not us.
The treaties with Great-Britain have no bearing on this case. The 6th article of the treaty of 1783, merely provides against future confiscations and prosecutions for the conduct of those who took part in the American war. The 9th art. of the treaty of 1794, secures to British subjects then holding lands in the United States, the right to hold and enjoy the same, and the right to dispose thereof by sale or devise, and extends to their heirs and assigns tile same legal remedies which would be incident to such lands, if the same were held and claimed by American citizens. These treaties cannot with propriety, in my opinion, be construed to intend, a restoration of all individuals to the same condition they were in before the war, as far as existing circumstances would permit.” See 2nd Tucker’s Blackstone, Jlpp. 62. They cannot, therefore, restore to Richard and Thomas Osborne, the inheritable blood which they would have possessed, in case the revolution had not taken place ; nor allow them to succeed as heirs to the estate of an. American citizen. The case of Dawson’s Lessee vs. Godfrey, 4th Cranch, 321. must be regarded as an authora- *67 live decision on this question, for it is the judgment of the Supreme Court of the United States, on the construction of treaties. See 3rd Binn. 86. Lessee of Jackson vs. Burns, 3a American Law Journal, 23. For these reasons, I am of opinion, that the plaintiff is entitled to judgment.
Grimke, J.
This case has been already determined by the decision of this Court, where one Halliburton, a citizen of the United States, claimed the estate of one White. It has also been decided in Ennis vs. Franklin, and in Love vs. Hadden, at Columbia; and it seems from a case in 4th Cranch, 321. that the Supreme Court of the United States agrees with the above decisions. The point here is, whether antenati and aliens can inherit the. estates of citizens of this country. Calvin’s case in Coke, which is always quoted and relied on upon such occasions, does not apply, because he owed allegiance to the king of Great Britain, even before the union of Scotland happened. But did the claimants in this case ever owe allegiance to the United States ? certainly not; for the brief states that they were born before the independence of the United States; as aliens they have no inheritable blood in them: and, therefore, the land must es-eheat to the city.